AMERICAN MANUFACTURING CO. *v.* UNITED STATES (No. 818).[1]

The merchandise was classified by the collector as bagging made of jute butts and waste, and was assessed for duty under paragraph 355, tariff act of 1909. The protest claimed alternatively under two paragraphs, to wit, 358 and 480, of that act. On the date set for hearing the Government asked that a consent order sustaining the protest should be entered of record. The protestants objected to this, insisting on a hearing and a decision upon the question of law involved. The board denied this, and, directing a submission of the case without a trial of the issues of fact, sustained the protest. An assessment was ordered under the provisions of paragraph 358. The appeal was taken from the order sustaining the protest.

A CONSENT ORDER. WHEN BOTH PARTIES DO NOT CONSENT.
The order sustaining the protest was not made by the consent of both parties, nor upon the express admission by the Government of any of the facts alleged in the protest. This was not a consent order in the legal acceptation of the term; it was not an order legally following on an express admission of fact by one of the contending litigants. The protestant had the right to show by evidence whether the merchandise belonged to one or the other of the two classes, as alleged in the protest.

United States Court of Customs Appeals, February 1, 1913.

APPEAL from Board of United States General Appraisers, Abstract 27492 (T. D. 32126).

[Reversed.]

*Brown & Gerry* for appellant.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *William A. Robertson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain goods imported at the port of New York were classified by the collector of customs as bagging for cotton made of jute butts and wastes. The merchandise was accordingly assessed for duty at six-tenths of 1 cent per square yard under the provisions of paragraph 355 of the tariff act of 1909, which said paragraph reads as follows:

355. Bagging for cotton, gunny cloth, and similar fabrics, suitable for covering cotton, composed of single yarns made of jute, jute butts, or hemp, not bleached, dyed, colored, stained, painted, or printed, not exceeding sixteen threads to the square inch, counting the warp and filling, and weighing not less than fifteen ounces per square yard, six-tenths of one cent per square yard.

The importer protested that the merchandise was not composed of single yarns made of jute, jute butts, or hemp, and that therefore it was not dutiable under the provisions of paragraph 355. The protest claimed, first, that the goods were woven articles or manufactures composed wholly or in chief value of vegetable fiber other than flax, hemp, or ramie, dutiable at 45 per cent ad valorem under paragraph 358, and, second, that if not dutiable under paragraph 358 it was dutiable at 10 per cent ad valorem under the provisions of paragraph 480. Paragraphs 358 and 480, under which the importer claimed, are as follows:

358. All woven articles, finished or unfinished, and all manufactures of flax, hemp, ramie, or other vegetable fiber, or of which these substances, or any of them, is the

component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The paragraph under which the assessment was made by the collector imposed on the goods a total duty of 73 cents. If the importation had been classified as woven articles or manufactures composed wholly or in chief value of vegetable fiber other than flax, hemp, or ramie, the full duty on the goods at 45 per cent ad valorem under paragraph 358 would have amounted to $3.60. Had the merchandise been assessed as a nonenumerated raw or unmanufactured article the duty thereon under paragraph 480 at 10 per cent ad valorem would have amounted to 75 cents.

When the protest came on for hearing apparently no sample of the goods or testimony on behalf of the Government was submitted to the Board of General Appraisers. At that time counsel for the Government asked for a suspension, which, being denied, he announced to the board that inasmuch as the amount involved in the case was extremely small he was authorized by the Assistant Attorney General to consent on the record to the entering of an order sustaining the protest. Counsel for the importer refused to accept the stipulation of Government counsel and stated that the protestant desired to try the case and present testimony in support of its protest, inasmuch as the proceedings had been taken with the knowledge and consent of the Secretary of the Treasury for the purpose of securing from the board a ruling on the question of law involved. The Board of General Appraisers refused, however, to hear any testimony on behalf of the protestant, and, after directing that the case be submitted without a trial of the issues of fact, ordered that the protest be sustained. these rulings of the board counsel for the importer took their exception.

In the formal decision of the board it was directed that the protest be sustained and that assessment "be made under the provisions of paragraph 358, as claimed."

The order sustaining the protest was not made by consent of both parties, nor upon the express admission of the Government of any of the facts alleged in the protest. It was consequently not a consent order in the legal acceptation of the term, and neither was it an order which legally followed any express admission of fact by one of the contending litigants.

From the language used in consenting to the order sustaining the protest we can draw no other conclusion than that the Assistant Attorney General did not deem a contest worth while, and that so far as he was concerned the protest might be sustained on any of the grounds alleged by the importer.

Admitting for the purposes of this case only that the concession of the Assistant Attorney General eliminated the return of the collector

from all consideration, the board was still confronted with the problem of determining on which of the two claims alleged by the importer the protest should be sustained.   The board could not sustain both grounds of the protest, and even if the consent of the Assistant Attorney General could be construed into an admission of all the facts alleged in the protest, it was still necessary for the board to ascertain whether the merchandise imported was a woven article or manufacture composed wholly or in chief value of "other" vegetable fiber, or whether it was a raw or unmanufactured article not specially provided for.   Whether the merchandise belonged to one or the other of the two classes alleged in the protest was a question of fact, and that question could not be settled by the board without some evidence to justify the conclusion reached.

As the importer was not permitted to introduce any testimony in support of his protest, the decision of the board that the goods were dutiable under paragraph 358 finds no more warrant in the evidence disclosed by the record than would a finding that the goods were nonenumerated raw or unmanufactured articles under the provisions of paragraph 480.

True, the collector returned the merchandise as cotton bagging, and cotton bagging may be a manufactured article; but as the correctness of the collector's return was the very thing put in issue by the protest, we do not see how the return can be invoked as conclusive evidence against the claims of the importer, who was not permitted to impeach it by testimony.   We think the finding of the board is not sustained by the evidence, and that the board erred in refusing to permit the importer to introduce testimony in support of its protest.   The decision of the board is therefore *reversed*, with directions that the case be retried, and that on such retrial the importer may be permitted to introduce proper testimony and evidence in support of either or any of the claims of its protest.

### DISSENTING OPINION.

BARBER, Judge: Among other reasons therefor, I dissent because—

(a) I think the tender of the Government before the board gave to the importer the right to take an order from that tribunal sustaining its protest as to any claim made therein upon which it might elect to stand, and, therefore, that there was nothing further to litigate there.

(b) The Government in this court tenders its consent that the importer may have judgment sustaining the protest upon any claim made therein, or may have the judgment of the board reversed and the action of the collector sustained, and there is, therefore, nothing to litigate here.

(c) The logical result of the court's decision is, I think, that the Government can not consent that judgment may go against it, either before the Board of General Appraisers or in this court, unless

the importer is willing.   If this be so, it must follow that importers have not a corresponding right unless the Government is willing.

To my mind, such results are not justifiable and can not be sustained in principle or by authority.

Either party, by conceding all the other claims, should have, and and I think has, a legal right to get out of court by suffering judgment in a civil case, like the one here.

The fact that the protest makes alternative claims is immaterial, as an importer should be able to select one on which he will take his judgment; otherwise he is using the courts to settle a question, real or fictitious, concerning which he is the only party who is interested in its determination. .